## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARITA TUBBS, on behalf of herself and the class she seeks to represent,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No.: 2:15-cv-01547-MHH** |
| **NORFOLK SOUTHERN CORPORATION** | ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Marita Tubbs brings this action against her former employer, defendant Norfolk Southern Corporation for alleged race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and Section One of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981a. (Docs. 1 & 25). Ms. Tubbs asserts a race discrimination claim against Norfolk Southern on behalf of herself and a putative employee class based on the defendant's failure to select African-American employees for its Remote Intelligent Terminal System Training Team. (Doc. 25, ¶¶ 33-44).

Norfolk Southern moved to dismiss, or, in the alternative, moved for summary judgment on Ms. Tubbs's discriminatory failure to promote claims. (Doc. 30).[1] Norfolk Southern attached the declaration of Timmy W. Veazey to its motion. The declaration includes as exhibits Ms. Tubbs's charge of discrimination and business records maintained by the defendant. (Doc. 30-2). Ms. Tubbs attached two exhibits to her response in opposition to Norfolk Southern's motion: a sworn declaration and business records maintained by the defendant. (Doc. 36). Because the parties relied on matters outside the pleadings, the Court will treat Norfolk Southern's motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). For the reasons discussed below, the Court finds that Norfolk Southern has not met its burden of proving that there are no genuine issues of material fact. Therefore, the Court will deny Norfolk Southern's motion for summary judgment.

## I.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a

---

[1] Ms. Tubbs also asserts an individual claim against Norfolk Southern for race discrimination and retaliation based on her termination from Norfolk Southern. (Doc. 25, ¶¶ 45-52). Ms. Tubbs's discriminatory and retaliatory termination claim is not subject to Norfolk Southern's pending motion. (Doc. 30-1, p. 1, n. 1).

motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When considering a summary judgment motion, a court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp Art, Inc. v. U.S. Postal Service,* 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Martin v. Alamo Community College Dist.,* 353 F.3d 409, 412 (5th Cir. 2003)).

## II.    Factual and Procedural Background

Ms. Tubbs is an African-American female. She worked for Norfolk Southern from August 8, 2004 until June 6, 2014, when Norfolk Southern terminated her employment. (Doc. 36, p. 20). Ms. Tubbs worked as a conductor from December 2004 to February 2007. (*Id.*, p. 22). Sometime prior to 2009,

Norfolk Southern promoted Ms. Tubbs to a locomotive engineer position, and she held that position until her termination. (*See Id.*; Doc. 30-2, p. 7).

In 2009, Ms. Tubbs learned that her supervisor, Train Master Hill selected Brad Baker, a Caucasian male who worked as a conductor, for a training position with Norfolk Southern. (Doc. 30-2, p. 7; Doc. 36, p. 20). Ms. Tubbs wanted to work in training for Norfolk Southern, and she asked Mr. Hill how to apply for the training position that Mr. Baker received. (Doc. 36, p. 20). Mr. Hill informed Ms. Tubbs that she was not eligible for the training position because only conductors were eligible, and she was an engineer. (Doc. 30-2, p. 7; Doc. 36, p. 20).

Between 2009 and 2012, Norfolk Southern selected five employees, including Mr. Baker, to work as Remote Intelligent Terminal ("RIT") trainers in the southeast. (*See* Doc. 30-2, p. 2; Doc. 36, p. 27). The RIT trainers were actively working as conductors when Norfolk Southern selected them as trainers, and they trained other conductors on the use of an electronic reporting device. (Doc. 30-2, p. 2). Norfolk Southern officials hand-selected employees to interview for the RIT trainer positions; the company did not post notices about the training program or the available positions. (Doc. 36, p. 26). Additionally, Norfolk Southern did not make announcements about its selections for the RIT training program. (*Id.*, p. 21).

In late August 2012, Anthony Ceephus, a coworker, informed Ms. Tubbs that Norfolk Southern had not selected an African-American employee to be an RIT trainer in Alabama. (*See* Doc. 30-2, p. 7; Doc. 36, p. 21). This was the first time Tubbs learned of the RIT training program by name. (*Id.*). Ms. Tubbs then spoke to a union representative, Justin Humphries, to learn more about the RIT training program and the employees Norfolk Southern selected to be RIT trainers. (*Id.*).

When they met, Mr. Humphries gave Ms. Tubbs a letter dated August 29, 2012. (Doc. 36, pp. 21-22). The letter is addressed to members of the United Transportation Union Local 622. The letter explained that certain union members requested that Mr. Humphries conduct "an investigation on Norfolk Southern's R.I.T. Traning program . . . to examine a possible improper hiring process as well as possible racial discrimination when choosing who would be employed on the R.I.T. Training team." (Doc. 36, p. 26). The letter stated in pertinent part:

> The R.I.T. training program is a small group of Norfolk Southern Conductors that are sent around the system to train other conductors on the use of the R.I.T. device. . . .
>
> [] The R.I.T. Training program has been going on for about 3 years. [] R.I.T. employees are all conductors prior to joining [the] team. [] All R.I.T. employees were hand selected by company officials to join the team. There were no bulletins, memos, or any application process to apply for the job to become part of the R.I.T. Training team. [] No R.I.T. employees to my knowledge in the southern section of Norfolk Southern system are of any other race other than white (no African Americans or other minorities). . . . [] Working on the R.I.T. team

provides employees with a greater opportunity to seek promotion in the Company.

R.I.T. employees that were hired locally are all white males.

Name
1. Nathan Lane
2. James Hubbard
3. Shane Whitlow
4. Bradley Baker
5. Brandon Cleckler

(Doc. 36, pp. 26-27).

Before reading the August 29, 2012 letter, Ms. Tubbs did not know that Norfolk Southern selected Lane, Hubbard, Whitlow, or Cleckler for RIT trainer positions, or for any other training position. (*Id.*, p. 22). Ms. Tubbs knew that Whitlow was qualified as a locomotive engineer, just as she was, and he was not just a conductor when Norfolk Southern selected him to be a RIT trainer. (*Id.*).[2] Therefore, after reading the letter, Ms. Tubbs believed that Mr. Hill misled her in 2009 when he said that only conductors were eligible for the training position. (*Id.*). Ms. Tubbs later learned that Nathan Lane also had qualified as a locomotive engineer before Norfolk Southern selected him for the RIT training team. (*Id.*, p. 23).[3] Although both Whitlow and Lane were qualified to work as locomotive

---

[2] Whitlow's abbreviated employee profile from Norfolk Southern shows that he was promoted to locomotive engineer on April 20, 2007 and promoted to the RIT conductor trainer position on October 4, 2009. (Doc. 36, p. 29).

[3] Lane's abbreviated employee profile shows that he was promoted to locomotive engineer on October 10, 2007 and promoted to the RIT conductor trainer position on April 11, 2011. (Doc. 36, p. 31).

engineers, Norfolk Southern's records indicate that both men were actively working as conductors when Norfolk Southern selected them for RIT trainer positions. (Doc. 30-2, pp. 2, 10-16).

After learning about the RIT training program and the employees Norfolk Southern selected as RIT trainers, Ms. Tubbs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 4, 2012. (Doc. 30-2, pp. 4-8). In her charge, Ms. Tubbs asserts that Norfolk Southern discriminated against her on the basis of race and sex, and she alleges that Norfolk Southern only selects white males to work on its RIT training team and that a white conductor was promoted to a RIT trainer position in August 2012. (*Id.* at 7).[4] Ms. Tubbs received no relief on the basis of her EEOC charge. Consequently, she filed this action.

## III. Discussion

Norfolk Southern asks this Court to dismiss Ms. Tubbs's discriminatory failure to promote claims under § 1981 and Title VII because the claims are untimely. (Doc. 30-1). Ms. Tubbs concedes that her § 1981 failure to promote claim is untimely. Therefore, the Court grants Norfolk Southern's motion as to Ms. Tubbs § 1981 claim. The Court devotes the balance of this opinion to Ms. Tubbs's Title VII claim.

---

[4] Ms. Tubbs does not assert a sex discrimination claim in this action. (*See* Doc. 25).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, an aggrieved employee must file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the date on which the alleged discriminatory act occurred. 42 U.S.C. § 2000e-5(e)(1); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1220 (11th Cir. 2001). A Title VII claim based upon an alleged discriminatory act that occurred more than 180 days before a plaintiff filed her EEOC charge generally is untimely and subject to dismissal.

The discriminatory act that forms the basis of Ms. Tubbs's Title VII failure to promote claim occurred in 2009 when Mr. Hill told Ms. Tubbs that she was not eligible to become an RIT trainer because she was an engineer, not a conductor. Ms. Tubbs did not file an EEOC charge until 2012. (Doc. 30-1, pp. 1, 6-7, 11-14). Consequently, Ms. Tubbs's Title VII claim survives Norfolk Southern's summary judgment motion only if the doctrine of equitable tolling saves her claim.[5]

Courts apply the doctrine of equitable tolling sparingly. A "finding of extraordinary circumstances necessary for equitable tolling is reserved for extraordinary facts." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1154–55 (11th

---

[5] Ms. Tubbs was not required to plead equitable tolling in her complaint. *See Villarreal v. R.J. Reynolds*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc).

Cir. 2005) (quotation marks and alteration omitted). Absent proof that an employer actively tried to mislead a plaintiff, a plaintiff may avail herself of equitable tolling by proving "'(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing.'" *Villarreal v. R.J. Reynolds*, 839 F.3d 958, 971–72 (11th Cir. 2016) (en banc) (quoting *Menominee Indian Tribes of Wisc. v. United States*, __ U.S. __, 136 S.Ct. 750, 755 (2016)). If evidence indicates that an employer tried to mislead the plaintiff, then "'the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for [her] rights.'" *Villarreal*, 839 F.3d at 972 (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)).[6]

As grounds for its summary judgment motion, Norfolk Southern relies on the Eleventh Circuit's recent decision in *Villarreal v. R.J. Reynolds Tobacco Company*. (Doc. 30-1, p. 16; Doc. 38).[7] In *Villarreal*, the plaintiff applied for a

---

[6] The Eleventh Circuit has adopted as binding precedent all decisions the former Fifth Circuit issued before October 1, 1981. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[7] In its brief in support of its motion for summary judgement, Norfolk Southern relied upon the panel decision in *Villarreal v. R.J. Reynolds Tobacco Company*, 806 F.3d 1288 (11th Cir. 2015). (*See* Doc. 30-1 at 16). On February 10, 2016, the Eleventh Circuit vacated the panel decision and granted a petition for rehearing *en banc*, *see* 2016 WL 635800, and the Circuit released its en banc opinion on October 5, 2016. *Villarreal v. R.J. Reynolds Tobacco Company*,

position with R.J. Reynolds when he was 49 years old, and R.J. Reynolds rejected the plaintiff's application. 839 F.3d at 961. The company did not provide Mr. Villarreal with a notice of the rejection or a reason for rejecting his application. Mr. Villarreal did not follow up on his application. *Id.* More than two years after Mr. Villarreal submitted his application, a lawyer "contacted [him] and told him that R.J. Reynolds may have discriminated against him on the basis of his age." *Id.* Mr. Villarreal then filed a charge of discrimination with the EEOC against R.J. Reynolds. *Id.* After the EEOC rejected Mr. Villarreal's charge, he filed suit in federal district court, asserting Title VII claims against R.J. Reynolds and alleging that "he did not become aware until shortly before filing the charge that there was reason to believe that his [] application had been rejected on account of his age[, and that] the facts necessary to support his charge of discrimination were not apparent to him, and could not have been apparent to him, until less than a month before he filed his [] charge." *Id.* at 262 (alterations and quotations in original omitted). The district court granted R.J. Reynolds's motion to dismiss, and Mr. Villarreal appealed. *Id.*

The Eleventh Circuit affirmed the district court's dismissal of Mr. Villarreal's Title VII claims in part because it found that Mr. Villarreal was not entitled to equitable tolling. 839 F.3d at 961. In reaching its decision, the Eleventh

---

839 F.3d 958 (11th Cir. 2016) (en banc). Norfolk Southern brought the *en banc* opinion to the Court's attention. (Doc. 38).

Circuit applied the general test for equitable tolling. *Id.* at 971-72. The Eleventh Circuit found that Mr. Villarreal was not diligent as a matter of law because "he alleged he did nothing for more than two years between his initial application and the communication from the lawyer." *Id.* In its opinion in *Villarreal*, the Eleventh Circuit noted that the former Fifth Circuit's decision in *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975), did not apply to Mr. Villarreal's claims because he "did not allege or attempt to allege that R.J. Reynolds actively misled him." *Id.* at 972.

Based on the *Villarreal* opinion, Norfolk Southern argues that the doctrine of equitable tolling cannot apply in the present case because Ms. Tubbs's allegations establish that she was not diligent as a matter of law. (Doc. 38 at 2). In particular, Norfolk Southern asserts that Ms. Tubbs cannot show she was diligent because, like Mr. Villarreal, Ms. Tubbs did nothing for more than two years after Mr. Hill told her she was ineligible for the training positions because she was a locomotive engineer. (*Id.*). The Court is not persuaded because Norfolk Southern's argument ignores an important distinction between the case at hand and *Villarreal*: Mr. Villarreal did not allege that R.J. Reynolds actively misled him about the reason for his rejection, *see* 839 F.3d at 972, while in this case, Ms. Tubbs alleges in her fourth amended complaint that Norfolk Southern actively misled her about her eligibility for the RIT training program. (Doc. 25, ¶¶ 26-27).

In addition, with respect to the putative plaintiff class, Ms. Tubbs alleges in her amended complaint that Norfolk Southern "prevented African-Americans from learning about and/or competing for opportunities in jobs traditionally held by Caucasian employees." (Doc. 25, ¶ 10).

Even so, Norfolk Southern argues that equitable tolling does not apply in this case because Ms. Tubbs has admitted that she learned of the facts supporting her Title VII claim more than 180 days before she filed her EEOC charge. (Doc. 30-1, pp. 17-18). Specifically, Norfolk Southern asserts that Ms. Tubbs's allegation that Whitlow and Lane "were working as [] Locomotive Engineers at the time of their selection to the RIT team" establishes that she knew of Whitlow's and Lane's promotions to RIT trainer positions in 2009 and 2011 respectively. (*See id.* (quoting Doc. 25, ¶ 26)). That is a logical leap. Ms. Tubbs stated in her sworn declaration that she did not know Whitlow and Lane had been promoted to the RIT training position until she received the August 29, 2012 letter from Justin Humphries. (Doc. 36, pp. 21-22). Viewing the record in the light most favorable to Ms. Tubbs, she learned of the Whitlow and Lane promotions less than a week before she filed her EEOC charge on September 4, 2012.

Again, viewing the evidence in the light most favorable to Ms. Tubbs, the Court is not persuaded that Ms. Tubbs's supervisor told her the truth when he informed her that she was ineligible for the RIT training program because only

conductors were eligible.  (*See* Doc. 30-1, p. 15; Doc. 37, pp. 1-2, 8-9).  Norfolk Southern argues that "[a]t most, Tubbs has demonstrated that she was confused over her supervisor's use of the word 'conductor,' assuming 'conductor' excluded everyone who ever attended locomotive engineer school, regardless of whether they were actually working as an engineer."  (Doc. 37, p. 9).  According to Norfolk Southern, its evidence demonstrates that "Lane and Whitlow *were actively working as conductors*" when Norfolk Southern selected them for the RIT training program.  (*Id.*, pp. 8-9 (emphasis in original)).

According to Ms. Tubbs, Mr. Hill told her that only conductors were eligible for the RIT training position, not that only employees "actively working as conductors" were eligible.  (*See* Doc. 25, p. 11; Doc. 36, p. 20).  Although the distinction may seem minor, it is important.  The statement that only conductors were eligible for the RIT training position could reasonably be expected to lead to an inference that employees who had qualified for and been promoted to locomotive engineer positions were not eligible to be RIT trainers even if the engineers previously served as conductors.  Thus, viewing the evidence in the light most favorable to Ms. Tubbs, the Court finds that there are questions of fact regarding equitable tolling.

Viewing the facts in the light most favorable to Ms. Tubbs and making all reasonable inferences in her favor, as the Court must at this stage in the litigation,

the Court finds that there is a question of material fact regarding application of the doctrine of equitable tolling to Ms. Tubbs's Title VII failure to promote claim. As a result, Norfolk Southern has not demonstrated that it is entitled to a judgment in its favor as a matter of law.

## IV.    Conclusion

For the reasons discussed above, the Court dismisses Ms. Tubbs's § 1981 failure to promote claim and denies Norfolk Southern's motion to dismiss, or in the alternative motion for summary judgment, on Ms. Tubbs's Title VII failure to promote claim.

**DONE** and **ORDERED** this September 27, 2017.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE